Next case we will hear is Dickinson v. Trump. And Mr. Shi whenever you're ready and again watch the clock if you want to reserve time for rebuttal. I'm Shi, government, and I hope to reserve five minutes. The district court entered an extraordinary limited re-injunction that effectively bans DHS officers from deploying common crowd control devices in many circumstances where their use would be appropriate. The scope and the substance of that injunction are completely untethered from plaintiff's claims which are limited in this posture to first amendment retaliation and so the injunction should be stayed pending. But the district court's error is probably best illustrated by one key injunction term. You can find that at subsection 1a of the injunction says that DHS officers aren't allowed to use tear gas, pepper balls, other common non-lethal crowd control devices quote unless the specific target of such a weapon or device poses an imminent threat of physical harm. Now that requirement phrased in that way has no basis whatsoever in the first amendment and is foreclosed by this court's decision in the Puente against the city of Phoenix case. There the court held that the first amendment poses no obstacle to law enforcement officers use of these exact same devices to disperse the crowd so long as there's not only an imminent threat of violence but also in response to imminent lawlessness including a threat of quote riot disorder or interference with traffic quoting an old supreme court case dating all the way back to 1940. So the district court's misunderstanding of the constitutional restrictions on when non-lethal crowd control devices may be used infects every aspect of its analysis from standing to the merits of the first amendment a retaliation claim all the way to the scope of the league. Maybe I'll just start with who's standing plaintiff's theory of standing is that in the past they were subjected to a handful of incidents where they were exposed to crowd control devices in a manner that they think was retaliatory. The district court in its findings not citing any part of the record just agreed with plaintiffs and said yep that's retaliatory but if I can interrupt here so does standing in some ways collapse with the merits because it seems like standing the court's standing analysis was predicated on the view that they were being intentionally targeted which seems to kind of go into the merits I mean is there really a is there some daylight between the two or are they essentially one and the same? For purposes of this case your honor the same reason plaintiffs don't have standing is the same reason they don't prevail on the merits so there is some degree of overlap your honor and maybe it's helpful for me to spell out exactly why for plaintiffs to show standing of course they've sued not the individual officers who did you know the particular uses of force that they said were retaliatory in the past they've sued DHS as an agency so to do that they need to demonstrate not that the individual officers had retaliatory intent but that the agency as a whole had the requisite retaliatory intent and so the way they tried to do that is twofold first they've noted that in the past they've been exposed to crowd control devices in a way that they think was retaliatory the problem with that theory is the supreme court's decision in Alliance Against the City of Los Angeles which just says as a law you can't get prospective injunctive relief based on mere allegations that something bad has happened to you in the past the council isn't lions distinguishable here we are talking about the first amendment and one can allege injury based on first amendment chill and so you know you've got past incidences of purported targeting that have created this and Dickinson among other plaintiffs have testified as to that injury and so it's a continuing and present injury that they're alleging why doesn't this take this out of the lions category of cases with the subjective chill allegations there's a different supreme court decision flapper and layered against tatum which flapper relied upon and what clapper made is that it's not enough for plaintiffs simply to say well I allege that I've been chilled because I'm afraid that something bad might happen to me if I exercise my first amendment rights then plaintiffs still need to point to something that makes that fear objectively reasonable and plaintiffs need to demonstrate that kind of objectively reasonable harm and again what they've fallen back to and this is the reason why the allegation of subjective chill it doesn't add very much to the analysis what they fall back to are well in the past they were exposed these allegedly retaliatory uses of force and they've attempted to infer the existence of a dhs wide policy embracing first amendment retaliation well council didn't I apologize but didn't we say we the ninth circuit and twitter versus paxton that self-censorship which is basically when a claimant is chilled from exercising their right of free expression isn't that enough for an injury in fact for the standing element so the court has many cases recognizing subjective chill as an injury in fact we're not arguing that a subjective chill or that a first amendment chill rather that's this is a critical distinction we're not arguing that a first amendment chill in itself is not a cognizable injury under article three that's not the argument our argument though is in as the um and as this court has said um in in uh cases such as phillips against cdp um allegations of subjective chill still need to be based on an objectively reasonable likelihood that the thing that plaintiffs objectively fear is going to happen and and that's the problem with the district court's analysis if I could shift to the merits this could also explain why um you know on the merits the district court's analysis of retaliation just doesn't uh hold water the court's analysis basically went as follows um certain dhs officers uh used force that in the court's view was excessive because the force used was excessive there is no other explanation for the officer's use of that force except uh subjective retaliatory animus against the speech that the officers were witnessing and then from there the court inferred a policy an unwritten policy contrary to dhs's express prohibition on retaliation uh the existence of an unwritten policy of race of retaliation district court followed and each of those steps uh was erroneous um just start with the premise that the force used was excessive the district court never actually specified what test for force was being used um at one point the district court cites the nelson um case but nelson against city of davis was a fourth amendment case and of course there is no fourth amendment claim presented in the motion for preliminary injunction which just underscores the extent of the district court's confusion and if one looks to the terms of the preliminary injunction um limiting the use of crowd control devices only to circumstances where there's an imminent threat of physical injury well again that's inconsistent with puente which recognizes that these devices may be used in a far broader range of circumstances than the district court acknowledged and so the district court's very premise that the force used was excessive was predicated on what appears to be just a gravely erroneous understanding of the restrictions that the constitution places on the use of crowd control devices but even if we spot the district court that and agree that some of the isolated incidents that plaintiffs have described to do amount to retaliation the court would or rather do amount to the excessive use of force there are many reasons why force might be excessive under the first amendment that have nothing whatsoever to do with subjective intent to retaliate so for example an officer might simply have been scared of a and that fear it turns out no basis objectively speaking on the threat the crowd actually posed an officer might counsel if i may interrupt but aren't instances of excessive force i mean assuming they are in such instances at least suggestive of retaliatory intent uh you know it's very difficult for plaintiffs to prove directly the state of mind of any particular officer so they rely on evidence and and if you have repeated instances of excessive force isn't that at least suggestive certainly relevant to the inquiry your honor we're not suggesting that it's not but there are other factors that are relevant to the inquiry too so if you look at for example the can to declaration which is i think document number 116-1 of this record um can choose describes the protest activity that dhs officers witnessed where you know hundreds if not thousands of protesters repeatedly tried to storm the facility blocked federal vehicles from entering or exiting built barricades in the street including in one instance by erecting a prop guillotine attacked dhs officers with improvised projectiles you know showed up with bats shields ballistic vests threw fireworks at the facility none of that appears in the district court's and those are also relevant facts that would go to whether the force used was um excessive much less subjectively uh retaliatory in nature i i see that i'm cutting into my rebuttal i i want to ask you a few questions counsel i'm sure um my colleagues will give you a little more time or will agree to give you more time um but let's talk about the circumstantial evidence of ice's intent here hitting people in the head without warning um being shot at while standing apart from others those are some of the things that the courts the district court cited to um to show circumstantial uh evidence of intent and this is what uh judge tong was talking about about basically like yeah we you know it's difficult for someone to know what the motivation was in the officer's head as they were doing something but we can look at circumstantial evidence is that not a correct court is free to look at circumstantial evidence and our point with respect to that is of course a depiction of what the circumstances show is incomplete uh the court uh didn't even cite uh the canto declarations description of what went on at those particular protests on those dates that plaintiffs have identified and so it's clearly erroneous for the court simply to ignore potentially relevant facts that are developed in the record um through declarations um but you know even a that plaintiffs would be entitled to some form of injunctive relief uh under the first amendment retaliation theory it's clear that they're not entitled to this injunction because again the scope of the injunction applies basically to anybody in the world who decides that they want to show up at the portland ice facility to protest i can if i can ask you a question uh you know the district court said to us it says to the appellate court please look at the videos um and i did look at them i think probably the vast majority of them do show unrest or trespassing but there are a few videos and i don't think they're of the plaintiffs maybe um miss hudgeson will shed more light but there are a couple of videos where it seems like a couple of people are not necessarily trespassing or causing trouble and you know one person is sprayed in the face another person is knocked down i think it's albie's video and hazleton video um admittedly i don't think they're of the plaintiffs but what do we do with those uh videos when we see those so your honor i can't speak to whether any given use of force depicted in the videos was retaliatory but the point is the district court can't simply assert with a broad brush well i've looked at all the videos and i believe they show evidence of retaliation the court made clear in puente subjective retaliatory intent is an incredibly rigorous inquiry that goes to the mind state of the officers in question and if the court just looks at videos without even acknowledging um the declarations indicating what else might have been occurring including at the very same protest wasn't captured in videos that's the sort of thing that one would expect the district court to have engaged with in order to provide an accurate understanding of the motivations of the officers in question council whose whose subjective intent do we look at the claims i understand are claims about dhs having an unwritten general policy right so do we look at the intent of the policymakers do we look at the intent of the officers on the ground do we have a collective aggregate intent test what's the test so the way plaintiffs have or rather the way the district court thought about retaliatory intent was as follows the officers had retaliatory intent that can be attributed to the agency because there was a lot of retaliation and so the agency had retaliatory intent so so that's the theory that the district court entered injunctive relief on and our point is that every step of that theory who requires uh legal or depends on legal assertions that just aren't accurate so the when the district court for example the individual officers had retaliatory intent there were two legal errors the first has to do with the test for what force is excessive and the second legal error had to do with the conflation of force that is objectively excessive with uh the presence of subjective retaliatory intent but so that's just step one step two is even if those particular instances some or all of them were retaliatory there would still need to be a basis for inferring contrary to the written policy an unwritten policy of retaliation and we know that although there were many protests that occurred at the portland ice facility involving first amendment activity not every one of those protests involved the deployment of crowd control devices and that's pretty strong evidence against the idea that dhs has this general policy encouraging officers to first amendment speech that they don't like and then you know the critical piece of all of this though is even if again the first amendment retaliation claims might support some injunctive relief the particular terms of this injunction bear no resemblance to any sort of restriction on the use of crowd control devices that the first amendment contains um for the reasons discussed um the the the terms restricting the use of for example tear gas um and pepper balls only to circumstances where there's an imminent threat of physical harm um that just can't be reconciled with puente and if permitted to carry out into force uh would amount to much more substantial restrictions on the use of these devices then counsel you keep citing to puente but wasn't different i mean factually different that was a single protest presented clear and present danger to president trump here we're talking about a systemic pattern you had plaintiffs submitted 62 declarations from recipient witnesses this is not just one event or a one-off this is over months isn't that make it different and distinguishable from puente no your honor um the key is that puente said just as a matter of first amendment law um when officers are confronted with a clear and present danger not only of physical violence but also of uh riot obstruction of traffic um imminent lawlessness spoke far more broadly then it is law the first amendment does not impose a barrier to the use of these devices and so nothing in puente turns on if they're confronted with only one protest then that's the test but if there are many many many different protests then somehow there's a different first amendment test um puente doesn't say that and that certainly doesn't you know you know make much of a basis for distinguishing puente sorry we're talking about patterns here right so the theory is that notwithstanding the fact that you know puente says these devices will be used in a far broader range of circumstances what i understand your honor to be asking is maybe there are lots and lots of circumstances where even puente's test was not met and yet the devices were used anyway and isn't that evidence of retaliatory intent um as to that i would just direct this court to um just the district court's findings um relying on for example uh the testimony of the lead plaintiff mr dickinson who said that he attended um at least 150 protests and yet if one looks at the number of instances of force used against mr dickinson that the district court thought was retaliatory that number is four i think or something in that vein and so um the the way that the district court characterized dhs officers engagement with protesters uh doesn't appear to be borne out even by the allegations that plaintiffs have put in i also watched the videos and i found them to be quite disturbing not all of them of course but a big majority of it um you know hawkins declaration yet a protester shot in the eye i i i just don't know how how we're justifying this so your honor i again i can't speak to any particular use of force by any given dhs officer i will note that uh the record indicates that um dhs has a few pending investigations into activities at the portland ice facility that are you know currently pending so i'm afraid i i don't have any more information about that dhs does take um the first amendment retaliation allegations seriously as evidenced by dhs's policy express policy forbidding it but the point is even if your honor thought that the record supported plaintiff's first amendment retaliation claims again that wouldn't justify the scope of the injunction here which again the terms of the injunction aren't limited to the circumstances that your honor have as described but extend even to circumstances where under puente their use would be totally lawful and yet the district has prohibited them and furthermore the scope of the injunction applies not merely to the named plaintiffs but to again anybody in the world who wants to go to the portland ice facility and protest and that's in defiance of the supreme court's decision in trump against casa um so so there's many different ways in which the relief that the district court entered uh is overbroad even granting uh incorrectly that plaintiffs are likely to prevail on their first amendment retaliation theory and the court need look no further than the la press club decision which accepted an analogous theory of first amendment retaliation but held that the injunction ought to be vacated in its entirety and so at a minimum then the court ought to stay this similarly overbroad injunction pending appeal um council you brought up la press club that the the first half of that opinion did find retaliatory intent and said that the court district court there properly issued the pi oh are we bound by that not your honor if you look at pages 14 and 15 of the slip opinion uh all the court concluded with respect to the retaliation merits was that quote there was no clear error in that district court's retaliatory intent finding uh but here by contrast the district court's intent analysis was infected by legal errors the first is that you know the very premise of the retaliation analysis was that the force used by individual dhs officers was constitutionally excessive that's at pages 20 and 21 of the district court decision but the court didn't cite the first amendment standard governing when non-lethal force will be used didn't cite puente except to try to distinguish it fruitlessly and relied on a fourth amendment theory um of excessive force even though there wasn't any fourth amendment why doesn't that go to overbreath that was the rationale that the this court adopted in la press club that that question about you know whether the injunction should be limited to uh uh enjoining retaliatory conduct as opposed to enjoining also non-retaliatory conduct that that is a question of overbreath but not as to kind of the merits of issuing the pi in the first place your honor because of the district court's theory um where the premise of the retaliation finding the very beginning was that the force used by officers was excessive um but it certainly is relevant your honor and indeed controls the question of the fact that this preliminary injunction is overbroken because um at a minimum even if the court thinks that the plaintiffs are likely to prevail on the first amendment retaliation theory this injunction prohibits the use of crowd control devices in circumstances where the first amendment would permit it and so the relief granted was improper okay counsel i know we took you way over time because we had a lot of questions so we'll give you an extra two minutes for rebuttal miss hutchinson whenever you're ready thank you honors may it please the court kimberly hutchison on behalf of the plaintiffs the district court found that under unified fps defendants have an unwritten policy of using excessive force against non-violent peaceful protesters at the portland ice building for the purpose of chilling the constitutional rights to free speech and the free press that factual finding was not clear error it establishes the plaintiffs are likely to succeed on the merits of their first amendment retaliation claim and that the equities and public interest weigh in favor of the injunction the district court's finding of irreparable harm in the form of first amendment show was also not clear error so it did not abuse its discretion in granting this injunction because the government has failed to show irreparable harm absent a stay and in fact plaintiffs will suffer irreparable harm if the injunction is lifted the government's motion must be denied in its entirety at minimum there's no lawful basis for for staying the other district court proceedings pending this appeal your honors have properly focused on the district court's finding of this unwritten policy as the basis for finding this policy from the highest unified command of fps i would point your honors to the menotti case decided by this court which expressly found that a policy or custom of retaliation may be inferred from widespread practices of evidence of repeated constitutional violations and the absence of evidence that officers were discharged or reprimanded while my friend on the other side points to supposed investigations into wrongful use of force no officer has ever been spoken to about any of these instances that even the the deputy regional director and the regional director himself acknowledged were inappropriate or deserved higher scrutiny and those are the examples of excessive force that the district judge examined through these this video evidence and the review of the extensive record here the government at most has indicated that when there is public scrutiny of an example of excessive force they then open an investigation without ever notifying the particular officers involved that their that their use of force was questionable that is indicative of a policy of allowing and in fact encouraging this type of excessive force and that encouragement also came from the highest levels of dhs when the fps regional director was directly praised for the tactics that were being used at the portland ice building including and the whole purpose of operation script jack was to address the protests at the portland ice building so the inference from this praise is that tactics used against protesters are exactly in line with the highest officials at dhs wanted these individual officers council council how do you distinguish uh puente though i mean there after the fact of the incidences a challenge coin was made commemorating the use of of tear gas there and yet the ninth circuit held this court held that there was no evidence of um a retaliatory intent well i think judge alva's point goes directly to that that was a single incident so actions taken after a single incident are not properly considered when determining whether there was retaliation this is a pattern of near daily occurrences of protesters at the portland ice facility and the continued use of the same type of excessive force that is being praised and not reprimanded so this isn't officers after the fact celebrating their own use of force it's the highest parts of dhs praising individuals for the force that they're using against protesters can you address the government's point that the district court didn't address conflicting or maybe contextual evidence that is the district court never addressed what was alleged that in the canto declaration that there was unrest vandalism trespass etc and i from what i take from the government is they use this crowd control devices for legitimate purposes and there may have been collateral harm and as a result and the district court really never addressed that part of the evidence i don't think that's a fair reading of the district court's analysis first mr cantu's declaration he admitted was based on reading reports written by other officers it was not based on his own personal experiences at the portland ice facility and so while the judge read that and in fact told the government he was looking forward to the opportunity to speak to mr canto himself who the government chose not to to bring we got into a deeper conversation about those topics during his deposition and also during the depositions of the other officers who were present at the ice facility during the dates that we were focused on for the purposes of the preliminary injunction so it's not that the district judge didn't consider the declaration it's that he considered it in context with all of the other evidence that he personally evaluated through live testimony as well as the full deposition testimony from mr canto and mr canto's supervisor mr johnson as well as 11 other dhs officers who were involved in particular incidents and those officers had very concerning explanations for what they were doing and why it revealed that they understood they were using these chemical munitions against individuals who were essentially passively resisting and that they never got any reprimanding for that so whereas mr canto's declaration you know pulls from written reports the district judge properly paced more of his reliance in the factual findings on the live testimony that gave context to each of those reports that were good explanation of it but you know it's incumbent on the district court to provide that explanation and you're i do believe that the district court does provide that explanation because he's talking about the particular um testimony that he heard so he he talks about the testimony that he heard from each of the plaintiffs and each of the witnesses who were you know class members who came and testified and he found them all credible so a finding that these witnesses were credible in their explanation of what happened and and not just those percipient witnesses but also the three law enforcement officers who testified as experts but also as percipient witnesses as to what was happening on the ground and i'm referring to the commanders of the portland police bureau and the officer from the oregon state police who themselves testified to their own experiences on the ground where they personally witnessed the use of chemical munitions against peaceful and non-violent protesters like it actually on that point so under the district court's injunction the agents could only use crowd these crowd control devices if they are imminent physical harm so under the district court's injunction if there were thousands of people blocking the entrance to the ice facilities so cars can't go in or out uh ice could not use these crowd control devices right correct although i do want to clarify that it's not just imminent harm to the officers it also allows the use of these munitions if there's imminent harm to any other individuals so this restriction actually tracks very closely with fps's own use of force policies and particularly their public order policing policy and it's important to remember that all of the dhs agents that were coming to the portland ice building for operation skipjack were coming to support fps in their mission to protect the building and so it is indicative what tools are necessary to achieve that goal to look at fps's own policies and what dhs is deemed to be necessary to protect if if the hundreds of people came and started vandalizing the gates or the security cameras like it's under the district court's injunction the agents still couldn't use these crowd control devices correct i don't see how how that's covered under the first amendment there i mean there's no first amendment right to commit vandalism or impede law enforcement it seems the injunction is was just way too broad i would agree that there's no first amendment right to commit unlawful behavior but the injunction directly allows the the officers to use other tools when people are behaving unlawfully and and actually the the portion of the injunction that's a3 allows for any dhs officer to use proportional force including less lethal weapons on any individual who's imposing this like real threat to the officers so they can book arrest individuals use oc spray against specific individuals engaged in violent unlawful conduct or actively resisting arrest or in a defensive capacity and then if it becomes a physical risk to the officers they can still use these chemical munitions so when thinking about whether this is something that is feasible and workable for law enforcement in addition to recognizing that four law enforcement officers all testified as much which is to include the three i just mentioned and mr kolakowski the former cpp commissioner we should look at the actual tools that fps has decided are necessary for this mission because that was something consistently testified to across all witnesses is that fps is in charge of this and it's fps's goal of protecting property and people that all of these agents are here to achieve so whatever tools the dhs has determined fps can use to accomplish that mission may be necessary that does not include tear gas that does not include chemical munitions fired indiscriminately into crowds in fact that's directly prohibited by fps's policy and if you look at the fps public order policing policy the restrictions therein which are specifically tailored to protecting first amendment rights are very consistent with this preliminary injunction the problem here is that there was testimony undisputed in the district court that these officers are not being trained on public order policing council can can i can i offer you a couple of scenarios okay scenario a uh the officers use uh chemical crowd dispersing munitions to clear the driveway that has been blocked by the thousands of protesters right in order for a vehicle to leave the building and to um for the scenario a scenario b is no use of chemical munitions right and the car the van leaves the the the the facility is on the driveway and the protesters are still there right and demonstrating and the car is now surrounded by by um by the thousands of protesters which scenario council do you think is the safer scenario so you're it's a little hard in that kind of sense it's hypothetical without knowing specifics of what munitions you're trying to use but in that scenario if there was the problematic protesters surrounding the car you have other supportive individuals and tools that the agents can use at that point at that point there may be a good argument that there is a imminent physical threat to officers your test council then appears to invite confrontation does it not it invites dangerous confrontation no and in fact the the court's finding which is which is required to have deference from this court was that the evidence showed that fps's current behavior is what is inviting chaos and violence and in fact that's consistent with the evidence that was reviewed on many occasions protesters did not begin to engage in any of what the government characterizes as violent behavior until after chemical munitions were deployed and that's consistent with the explanation by mr kulakowski and the other law enforcement experts that that sort of behavior by law enforcement can trigger a reaction in a crowd so the use of chemical munitions is what is causing chaos on the ground and causing everyone to be in a place of danger in fact those experts all testified that this is going to improve the safety of both law enforcement officers and the members of the public here and the the fps policies the public order policing policies reflect that because there isn't obviously there needs to be law enforcement managing activities that involve large crowds but that management cannot be at the sacrifice of first amendment rights there needs to be an equal goal of protecting first amendment rights and protecting the safety of everyone and the the policy itself written by fps which is what this preliminary injunction follows hits that balance appropriately it allows for the use of force using chemical munitions against specific individuals who are imminent threats to the physical safety of others it does not allow indiscriminate firing of chemical munitions into a crowd and that's what you see in these videos there's many many instances where the chemical munitions are actually being fired deep into the crowd far away from anyone who could be threatening the physical safety of officers or the safety of the the building itself there the indiscriminate filing of chemical munitions into crowds is unjustified under the fps policy and that is what is causing this first amendment chill because it's not appropriately tethered to any real threats the preliminary injunction just requires that officer behavior be tethered to specific threats against them or the property which is consistent with their own policies now circling back to this really the scope of this injunction which i understand there's some concerns from the applies to the argument that this is problematic under casas is disingenuous because we have a certified class here that class is specifically limited and in fact this is even more limited than other preliminary injunctions upheld by this court including la press club la press club is covering protests throughout the city of los angeles this is talking about protests at a single location that have been occurring since june 2025 and so i do disagree with my friend as to how much deference this court needs to give to the la press club holdings first with everything that was discussed about standing was discussed in la press club and should be decided in the same way by this court judge tongue was completely accurate that the chill the first amendment chill is a current injury that is ongoing and sufficient to give standing to the plaintiffs in this case to to get prospective injunctive relief the findings in la press club about retaliatory intent are also controlling on this court in terms of what factors should be looked at and la press club specifically pointed to extensive evidence of federal officers repeatedly targeting journalists and others who were far away from bad actors as well as evidence of deploying crowd control weapons even when crowds were already dispersing or attempting to disperse our our record is replete with the same type of evidence if you look at each of our named plaintiffs they fall into all of their examples fall into either one of those categories the ecumenical counsel can i just respond to that i'm looking at la press club and the court said the record contains extensive evidence that federal officers repeatedly targeted journalists and peaceful legal observers who stood far from any protesters or bad actors i i read the dickinson declaration and he was standing you know really close to the people who were blocking the driveway he himself may have may have been brought but blocking the driveway um which is a trespass which is unlawful behavior so to me that that evidence at least can you respond to that certainly so first i i would encourage you judge time to watch the video of mr dickinson he's against the wall and not blocking anything but more particularly with that quote i i would refer your honor to the declarations and testimony of um mr rios and mr mason who are both journalists they were both documenting and away from protesters when they were targeted particularly mr rios was had pepper balls fired at him 20 times and these are just the examples that are easily easily accessible from you but you can see other such examples in other journalists for example um mr i believe it's andrew worth was another declarant cited by the district court who was a journalist who was targeted and so that particular portion of la press club i think is more pointed for our journalists who were standing away from protesters documenting what was happening and was nonetheless personally targeted and told that by officers that they didn't care that they were just filming or members of the press the other quote that i was reading was from the same page on page 14 there is also evidence that defendants put deployed crowd control weapons even when crowds were already dispersing or comply with orders to disperse and that's where you can see the evidence of for example the ecmins or mr dickinson um they even mr dickinson's other explanation not the one on the driveway but his other incident he was walking away he got pushed he got shot from behind as he was leaving the area and so i'm not suggesting that every example fits into both of those quotes but nearly every example fits into one or the other quote that people were targeted away from protesters or people were targeted when they were attempting to disperse or even when people were not even in the federal property where they would need to leave because the the warning is warning people to leave the property that is closed that is supposedly a trespass so firing chemical munitions across the street and up the street and on people who are standing on the street has nothing to do with the what can the only thing that can be construed as a dispersal order which is just selling to saying to leave the federal property and i know you mentioned a few other instances of excessive force that i i would just reiterate and i think it was judge lee who mentioned these were our videos of the individual standing on the street and getting sprayed or standing away from federal property and having this excessive force the government wants to suggest that all of these individual instances of excessive force are being investigated but both mr johnson and mr kantu have confirmed that only four instances of potentially wrongful force are being investigated and nevertheless more than four instances that we reviewed in our depositions were acknowledged to be potentially wrongful use of force and so this is demonstrating as i mentioned in menotti that there is a failure to reprimand on any of these wrongful uses of force or potentially wrongful uses of force that is indicative of the unwritten policy that the district court found and that found finding was not clear error remembering that when your honors review these factual findings if you can look at the record and two different conclusions are plausible deference is in the district court is entitled to deference on his interpretation of that and that is what is required here for the unwritten policy of retaliation against protesters i see i'm way past my time unless you have additional questions great thank you mr she a couple minutes thank you your honor i want to make two points the first is plaintiff's presentation lays bare the unworkability of the injunction to the extent to which there is no basis in any sort of recognizable first amendment restriction on the use of force you heard plaintiff's counsel very straightforwardly admit that even if hundreds if not thousands of people are peacefully blocking the entrance and the surrounding streets of the ice facility there's no possibility under their theory that crowd control devices may be used in their view the only thing officers can do is to wade out into the crowd and start arresting people if they don't comply and as the dhs declarations point out that carries with it a significant risk of escalating the situation even further more importantly the theory doesn't even extend to people hundreds if not thousands of people who are vandalizing the property trespassing on um property trying to destroy government cars cameras fences in one case the canton declaration indicates that a protester threw what appeared to be a smoke bomb onto the top of the ice facility which then caught fire that just you know these are damages to property and it's not at all clear that plaintiffs think that crowd control devices may lawfully be used in those circumstances as well and again puente makes quite clear that the first amendment permits these devices to be used in a far broader range of circumstances than plaintiffs and the district court suggests and that indicates at a minimum that the injunction substantive terms are overbroad and and the second thing i just wanted to note uh was that a plaintiff's presentation again and again depended on the assumption that the force used was excessive but again plaintiffs never cited the relevant use of force test in the first amendment and neither did the district court um which relied on the fourth amendment and although plaintiffs provided a post-hoc explanation none of that explanation was present in the district council is the first amendment test um eminent lawlessness the clear and present danger test can't walk the test articulated in puente citing a number of other cases i think the supreme court's can't well decision and i think also the collins decision from this court um puente has a section describing uh when the force may be used uh to disperse a crowd without transgressing the first amendment and i would direct your honor to that passage so even let's say we agree with you that there was eminent lawlessness that would have justified the use of the chemical munitions can't plaintiffs still show retaliatory intent in other words can't the that's a separate question right um of subjective intent or is your position that once there's eminent lawlessness the first amendment claim goes away there's no first amendment claim anymore um your honor is right that and puente makes this clear by the way puente itself recognizes that um in the context the specific context of the use of crowd control devices um the uh first amendment retaliation framework is a poor fit we haven't argued that they can't bring the first amendment retaliation claim because puente addressed that claim and said you know even assuming that such a claim may be brought notwithstanding the objective test for when the first amendment prohibits these devices from being used you know plaintiffs still lose and so you know all we're asking is for the court to follow a similar path here and recognize that in the circumstances where the district court appears to have a great misunderstanding of what sorts of uh non-lethal crowd control devices the government may use without transgressing the first amendment uh that undermines plaintiff's ability to to uh succeed on the merits of their first amendment retaliation and counsel let's say we assume we agree with you that a stay is warranted with respect to the p.i what basis is there to stay the district court proceedings in their entirety so uh we're all we're suggesting there and as the 11th circuit did um in a different case that we cited in our brief uh the district court has made quite clear that uh there's going to be extensive discovery on the horizon my understanding is um that uh there will be a discovery uh meet and confer at some point in the middle of april i i think and after that the discovery train is going to leave the station and as our brief indicated uh the district court appears ready to permit um any party to get whatever discovery they want that will impose a huge burden on dhs um given just the breadth of plaintiff's claims and so with that discovery include class-wide discovery yes your honor my understanding is the district court um has suggested that there will be additional discovery relevant not only to the merits of plaintiff's claims but also to class certification and so there will be just so much discovery on the horizon and this court's um uh decision will offer helpful guidance to the district court and so in that circumstance all we're saying is it may make sense for this court to stay proceedings in district court until the court can provide such guidance and uh potentially limit uh the scope of discovery that the district court uh embarks upon great uh thank you both for the very helpful arguments uh the case is submitted and we are adjourned this court for discussion stands adjourned
judges: LEE, ALBA, TUNG